UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA R., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.:  20cv1771-RBB <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 21]; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF NO. 25]; AND REMANDING CASE FOR FURTHER PROCEEDINGS** |

On September 9, 2020, Plaintiff Patricia R.[1] commenced this action against Defendant Andrew Saul, Commissioner of Social Security, for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for disability insurance and supplemental

---

[1] The Court refers to Plaintiff using only her first name and last initial pursuant to the Court's Civil Local Rules.  See S.D. Cal. Civ. R. 7.1(e)(6)(b).

1

security income benefits [ECF No. 1].² Defendant filed the Administrative Record eleven months later on August 18, 2021 [ECF No. 16]. On October 22, 2021, Plaintiff filed a Motion for Summary Judgment [ECF No. 21]. Defendant filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Merits Brief on December 9, 2021 [ECF No. 25]. Plaintiff filed a Reply on December 28, 2021 [ECF No. 28]. Following the transfer of this matter from the Honorable Linda Lopez to Magistrate Judge Ruben B. Brooks, Plaintiff consented to have this Court conduct all proceedings on February 8, 2022 [ECF No. 30].³

For the following reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**; Defendant's Cross-Motion for Summary Judgment is **DENIED**; and the case is **REMANDED** for further proceedings.

## I.   BACKGROUND

Plaintiff Patricia R. was born in 1959 and previously performed clerical work at automobile dealerships. (Admin. R. 173, 351, 414, ECF No. 16.)⁴ On or about December 5, 2017, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. (Id. at 16, 351-57.) She alleged that she had been disabled since February 28, 2013, due to asthma, arthritis in both hands, major depressive disorder, anxiety, chronic sinusitis, and hyperlipidemia. (Id. at 378.) Patricia R.'s applications were denied on initial review and again on reconsideration. (Id. at 273-78, 281-92.) An

---

² Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).
³ The United States has informed the Court of its general consent to Magistrate Judge jurisdiction in cases of this nature.
⁴ The administrative record is filed on the Court's docket as multiple attachments. The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court cites to the page numbers affixed by CM/ECF.

administrative hearing was conducted on November 13, 2019, by Administrative Law Judge ("ALJ") Andrew Verne.  (Id. at 165.)  On December 23, 2019, the ALJ issued a decision and concluded that Patricia R. was not disabled.  (Id. at 16-27.)  Plaintiff requested a review of the ALJ's decision; the Appeals Council denied the request on July 13, 2020.  (Id. at 1-7.)  Plaintiff then commenced this action pursuant to 42 U.S.C. § 405(g).

## II.   LEGAL STANDARDS

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C.A. § 405(g), 421(d) (West 2011).  The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'"  Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)); see also Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014).  Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); see also Biestek v. Berryhill, ___ U.S. ___, ___, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions.  Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020).  The district court may affirm, modify, or reverse the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) The applicant suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of twelve months or more, and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. § 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled." Id. The applicant bears the burden of proving he or she was either permanently disabled or subject to a condition which became so severe as to disable the applicant prior to the date upon which his or her disability insured status expired. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

The Commissioner makes this assessment by employing a five-step analysis outlined in 20 C.F.R. §§ 404.1520 and 416.920. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2019). Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities. If not, the claimant is not disabled. Id. §§ 404.1520(c), 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. Id. §§ 404.1520(d), 416.920(d). If not, the claimant's residual functional capacity is assessed and the evaluation proceeds to step four. Id. §§ 404.1520(e), 416.920(e). Fourth, the Commissioner determines whether the claimant can do his or her past relevant work. If the claimant can do their past work, benefits are denied. Id. §§ 404.1520(f), 416.920(f).

1  If the claimant cannot perform his or her past relevant work, the burden shifts to the
2  Commissioner.  In step five, the Commissioner must establish that the claimant can
3  perform other work.  Id. §§ 404.1520(g)(1), 416.920(g)(1).  If the Commissioner meets
4  this burden and proves that the claimant is able to perform other work that exists in the
5  national economy, benefits are denied.  Id. §§ 404.1520(g)(1), 416.920(g)(1).

### III.    DISCUSSION

In his decision, ALJ Verne employed the five-step sequential analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920.  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 28, 2013, the alleged onset date (step one).  (Admin. R. 18, ECF No. 16.)  He concluded that Patricia R. had severe impairments−asthma, osteoarthritis, and depression/anxiety (step two).  (Id.)  The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (step three).  (Id. at 19-20.)  He then found that Patricia R. retained the residual functional capacity to perform medium work subject to additional specified limitations.  (Id. at 20.)  ALJ Verne next determined that Plaintiff was unable to perform her past relevant work (step four).  (Id. at 25-26.)  The ALJ concluded that Plaintiff was capable of performing the requirements of the representative unskilled medium occupations of checker/weigher, hand packager, and stubber/general office clerk as well as the unskilled light occupations of inspector, information clerk, and subassembler (step five).  (Id. at 26-27.)  The ALJ accordingly found that Patricia R. had not been under a disability from February 28, 2013, through the date of his decision.  (Id. at 27.)

Plaintiff makes three arguments: (1) the ALJ committed error in his evaluation of the opinions of the state agency physicians, (see Pl.'s Mot. Attach. #1 Mem. P. & A. 4-7, ECF No. 21); (2) the ALJ failed to articulate clear and convincing reasons for rejecting her subjective symptom testimony, (id. at 7-11); and (3) the Commissioner's decision

rests on an unconstitutional delegation of authority, (id. at 12-15). Plaintiff's second argument is addressed first because as will be discussed further below, the Court find that it presents a basis for remand, whereas Plaintiff's first and third arguments do not.

### A.     ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Patricia R. contends that the ALJ failed to articulate clear and convincing reasons to reject her symptom testimony. (Id. at 7-11.) At the administrative hearing, Plaintiff testified that her arthritis prevents her from working. (Admin. R. 174, ECF No. 16.) She was hospitalized once for observation after an asthma attack. (Id. at 175.) She has been prescribed a nebulizer, inhalers, and a spirometer for her asthma. (Id. at 175-76, 178.) Her asthma is exacerbated by smoke, pet dander, and smog, and anytime she catches a cold, "it goes into bronchitis and it goes into asthma." (Id. at 178-79.) When she has an asthma attack, her chest tightens, she coughs and sneezes, and she has difficulty breathing without an inhaler. (Id. at 179.) She experienced a severe exacerbation of her asthma in August 2019 when a cold progressed to pneumonia. (Id. at 179-80.) She was prescribed medications, including Prednisone, and it took a month, including weeks of bed rest, to fully recover. (Id. at 180.) When she experiences an attack, she typically "self-treats" at home with medication and goes to the emergency room if she is still not able to breathe well following her home treatments. (Id. at 181.) About two months prior to her August 2019 attack, she went to the emergency room for bronchitis and was prescribed rest and antibiotics. (Id.) That recovery required twelve days of rest. (Id. at 181-82.) A few times a month, when she feels her asthma coming on, she does a one-hour breathing treatment in the morning. (Id. at 182.) Her attacks often occur at night when she starts coughing and is unable to sleep. (Id.) She generally does not feel well immediately following a breathing treatment; it can take a couple of days or longer before she feels better. (Id. at 183.) She believes she went to the emergency room for her asthma attacks four or five times in 2019, as well as in 2018. (Id. at 184.) Her asthma has gotten worse

over the last five years.  (Id. at 184-85.)  She last worked in 2013 and believes she was let go from her last job because of her frequent absences due to asthma.  (Id. at 185, 190.)

An ALJ engages in a two-step analysis to determine the extent to which a claimant's report of symptoms must be credited.  First, the ALJ must decide whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  Garrison, 759 F.3d at 1014); see also SSR 16-3P, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b), 416.929(b) (2019).  Second, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the ability to perform work-related activities.  SSR 16-3P, 2017 WL 5180304, at *3; 20 C.F.R. §§ 404.1529(c), 416.929(c).  When the ALJ finds that a claimant is not malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Garrison, 759 F.3d at 1014-15; see also Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).[5]  This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony."  Lambert, 980 F.3d at 1277 (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)).

In this case, ALJ Verne determined that Patricia R. satisfied step one of the two-step analysis.  (Admin. R. 21, ECF No. 16.)  At the second step, the ALJ stated that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)  This language, which is routinely included in ALJ decisions denying

---

[5] The Commissioner contends that the "clear and convincing" standard is inconsistent with the deferential "substantial evidence" standard set forth in 42 U.S.C. § 405(g) but acknowledges that Ninth Circuit precedent requires its application.  (Def.'s Opp'n 5 n.2, ECF No. 16.)

benefits, is insufficient in and of itself to meet the requirements set forth in Ninth Circuit authority to reject a plaintiff's pain testimony because it does not "identify what parts of the claimant's testimony were not credible and why." See Lambert, 980 F.3d at 1277; Treichler, 775 F.3d at 1103. After making this boilerplate statement, ALJs typically identify the parts of the claimant's testimony that were not credible and explain the reasons for their finding. Treichler, 775 F.3d at 1103. Here, the ALJ devoted eleven paragraphs to detailing the clinical findings in the record that he believed did not support Patricia R.'s testimony, including eight paragraphs with references to Plaintiff's asthma condition. (Admin. R. 21-23, ECF No. 16.) But "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015); see also Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) ("[A] reviewing court should not be forced to speculate as to the grounds for an [ALJ's] rejection of a claimant's [symptom] allegations[.]" The ALJ thus committed legal error by failing to specifically identify which part of Plaintiff's testimony about the severity of her symptoms he found not credible and link that testimony to evidence that contradicted Plaintiff's testimony.

     Moreover, even if the clinical findings cited by the ALJ in his summary of the medical evidence could be construed as his reasons for finding Plaintiff not credible, they do not constitute clear and convincing reasons to reject Plaintiff's testimony regarding her asthma. For example, ALJ Verne first observed that on October 22, 2014, Patricia R.'s treating physician, Dr. Andrelita Barrera of Kaiser Permanente, "found normal pulmonary/chest effort and normal [] breath sounds and found no wheezes, no rales in her lungs[.]" (Admin. R. 22, ECF No. 16, citing id. at 502.) The ALJ ignores, however, that the primary reasons for Plaintiff's doctor visit were her arthritis and triglycerides, not her asthma. (Id. at 501.) While the ALJ is correct that Dr. Barrera reported during this visit

1  that Plaintiff's asthma was intermittent and "controlled," he does not provide any
2  explanation as to how this was inconsistent with Plaintiff's testimony.  (Id. at 22.)
3  Similarly, the primary reasons for Patricia R.'s office visit on July 13, 2015, during which
4  the ALJ noted that Dr. Barrera found no pulmonary issues of concern, (see id.), were her
5  arthritis and a pulled muscle in her chest, not her asthma.  (Id. at 495.)
6       The ALJ next refers to Plaintiff's February 9, 2016 visit to Kaiser Permanente,
7  during which she presented with an acute exacerbation of her asthma, and notes that the
8  physician "found normal respiratory effort in the claimant's lungs with no retractions,
9  wheezes end expiration[.]"  (Id. at 22, citing id. at 488.)  Wheezing during expiration
10  indicates narrowed airways and is a common symptom of and finding for asthma.  See
11  Merck Manual, https://www.merckmanuals.com/professional/pulmonary-
12  disorders/symptoms-of-pulmonary-disorders/wheezing (last visited June 29, 2022).  The
13  ALJ did not provide any explanation for why he believed this treatment note undermined
14  Plaintiff's report of symptoms, and the Court is unable to discern any logical reason.  In
15  the next paragraph, ALJ Verne observes that on October 3, 2016, Plaintiff told Dr.
16  Michael Shatz of Kaiser Permanente that she did not have many symptoms between her
17  asthma episodes, and her examination showed no respiratory issues.  (Admin R. 22, ECF
18  No. 16, citing id. at 479.)  This visit took place following, not during, an exacerbation of
19  Patricia R.'s asthma and thus is not inconsistent with her testimony.  (See id. at 479
20  ("Getting over an exacerbation now (just finished prednisone)".)  Additionally, although
21  the ALJ refers to Plaintiff's November 2017 medical record as reflecting a visit to the
22  emergency department, (see id. at 22), this is not accurate.  Rather, this visit was to
23  Kaiser Permanente's outpatient clinic in Otay Mesa, and Plaintiff reported that she had
24  experienced a bad asthma flare two weeks before while in Mexico.  (Id. at 466.)  Plaintiff
25  was provided with medical advice on how to manage her asthma with a maintenance
26  steroid inhaler, Singulair, and a "rescue" albuterol inhaler.  (Id. at 467.)  Again, it is not at

all clear how the treatment notes from this visit undermine Plaintiff's testimony, and the ALJ has offered no explanation permitting the Court to discern his path of thinking for purposes of review.  See Brown-Hunter, 806 F.3d at 494-95 (finding reversible error "when we cannot discern the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why she found Brown–Hunter's testimony to be not credible.").

Furthermore, the record is replete with objective clinical findings substantiating Plaintiff's asthma condition, some of which were acknowledged by the ALJ, and some of which were not.  As set forth above, on February 9, 2016, Plaintiff's doctor noted that Patricia R. was wheezing on her physical exam.  (Admin. R. 488, ECF No. 16 ("wheezes end expiration").)  On April 6, 2016, Dr. Raymond Poliakoff observed that Plaintiff gave normal effort on her pulmonary exam and demonstrated wheezing but no rales.  (Id. at 484.)  On January 11, 2017, Patricia R. saw Dr. Richard Garris because of an exacerbation of her asthma and reported that she had been using her inhaler at home for the past week without relief.  (Id. at 476.)  Dr. Garris observed "scattered wheezes" in her lungs.  (Id. at 477.)  On February 28, 2018, Plaintiff was treated by Dr. Jorge Mata for shortness of breath, wheezing, coughing, and lack of sleep due to needing to sit up to breathe.  (Id. at 578.)  Plaintiff's objective findings included wheezing upon inspiration and crackles, or rales.  (Id. at 579.)  Two weeks later, on March 10, 2018, she went to urgent care because although her symptoms initially got better after seeing Dr. Mata, they had returned.  (Id. at 601.)  Upon physical exam, Plaintiff's lungs demonstrated "scattered wheeze and rhonchi bilateral."  (Id. at 602.)[6]  Wheezes were again heard in Plaintiff's lungs during an urgent care visit on April 14, 2018, and emergency room visit

---

[6] Rhonchi are low-pitched abnormal breath sounds heard through a stethoscope that occur when air tries to pass through bronchial tubes that contain fluid or mucus.  See Healthline.com, https://www.healthline.com/health/breath-sounds#types (last visited June 29, 2022).

on May 12, 2018. (Id. at 627, 668.) The emergency room physician observed that Plaintiff's "peak flow was around 250[,] barely increased to 620 after 2nd treatment[,]" and her "predicted value was around 430 for her age and height." (Id. at 668.) On August 28, 2019, Patricia R.'s complaint of upper respiratory symptoms at urgent care was supported by physical exam findings of diffuse wheezing and left lower lobe rales. (Id. at 1084-85.)

In sum, for the foregoing reasons, the ALJ committed legal error by failing to provide specific, clear, and convincing reasons to reject the Plaintiff's testimony about the severity of her symptoms.

## B.   ALJ's Evaluation of Opinions of State Agency Physicians

Plaintiff argues that ALJ Verne failed to properly evaluate the opinions of the state agency physicians concerning her asthma restrictions. (Pl.'s Mot. Attach. #1 Mem. P. & A. 4-7, ECF No. 21.) Two state agency physicians provided medical opinions regarding the limitations relating to Patricia R.'s asthma. The first, R. Masters, M.D., rated Plaintiff's environmental limitations on April 12, 2018, and opined that Plaintiff should "[a]void even moderate exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." (Admin. R. at 214-15, ECF No. 16 [emphasis added].) The second, C. Eskander, M.D., provided, on August 15, 2018, the same ratings as Dr. Masters regarding Patricia R.'s environmental limitations, but found that Plaintiff should "[a]void concentrated exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc." (Id. at 249-50 [emphasis added].) In his decision, the ALJ found these doctors' opinions to be persuasive. (Id. at 25; see also 20 C.F.R. §§ 404.1520c(a), 416.920c (requiring ALJ to evaluate medical opinions and prior administrative medical findings by assessing their "persuasiveness").) Nonetheless, in his formulation of Plaintiff's residual functional capacity, the ALJ seemingly ignored Dr. Masters's opinion that Patricia R. should avoid "even moderate exposure" to pulmonary irritants and determined that Plaintiff should

"avoid <u>concentrated</u> exposure to extreme cold, wetness, vibration, fumes, dust, gasses, odors, poor ventilation and other pulmonary irritants, including molds, pollens, smoke and other lung irritants[.]" (Id. at 23-24 [emphasis added].)  Similarly, the hypothetical question posed by the ALJ to the vocational expert at the administrative hearing described an individual who should "avoid <u>concentrated</u> exposure to extreme cold, wetness, vibration, fumes, dust, gasses, poor ventilation and other pulmonary irritants, including smoke, cat dander." (Id. at 192-93 [emphasis added].)  Nowhere in his decision does the ALJ account for the discrepancy between Dr. Masters's opinion that Plaintiff avoid <u>moderate</u> exposure to pulmonary irritants and Dr. Eskander's opinion that she avoid <u>concentrated</u> exposure to such conditions.

Patricia R. argues that the ALJ's misreading of Dr. Masters's opinion resulted in a failure to properly consider the opinion.  (Pl.'s Mot. Attach. #1 Mem. P. & A. 5, ECF No. 21.)  Relying on Social Security Ruling 85-15, she contends that the "difference between concentrated exposure and even moderate exposure to pulmonary irritants is significant[.]" (Id., citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985), at *8.)  She further asserts that the vocational expert's testimony has no evidentiary value because the expert did not contemplate a preclusion against even moderate exposure to pulmonary irritants. (Id. at 7.)  Defendant Commissioner maintains that any error in the ALJ's evaluation of the state agency physicians' opinions was harmless because "no atmospheric conditions exist" for the representative occupations identified by the ALJ at step five in his decision. (Def.'s Opp'n 8-9, ECF No. 25.)

To ascertain the requirements of occupations as generally performed in the national economy at step five, the ALJ may rely on vocational expert testimony or information from the Dictionary of Occupational Titles ("DOT").  <u>Pinto v. Massanari</u>, 249 F.3d 840, 845-46 (9th Cir. 2001); <u>see also</u> SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (providing that at steps four and five, the Social Security Administration relies "primarily

on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)]) for information about the requirements of work in the national economy[]"). Each job listed in the DOT categorizes the job's exposure to "atmospheric conditions," defined in the SCO as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin" as "not present," meaning the conditions do not exist; "occasionally," meaning the conditions exist up to one-third of the time; "frequently," meaning the conditions exist one-third to two-thirds of the time; and "constantly," meaning the conditions exist two-thirds or more of the time. SCODICOT, app. D (1993).

The Commissioner argues that Plaintiff's distinction between "concentrated exposure" and "moderate exposure" to pulmonary irritants is irrelevant because according to the DOT, four of the six representative occupations identified by the ALJ as jobs that Plaintiff could perform (checker, stubber, inspector, and subassembler) require <u>no exposure</u> to any atmospheric conditions. (Def.'s Opp'n 10, ECF No. 25.)[7] As observed by Defendant, the DOT specifically states that "atmospheric conditions" are "not present" and "condition does not exist" in the checker/weigher job, DICOT 369.687-014, 1991 WL 673071; the stubber/general office clerk job, DICOT 222.687-034, 1991 WL 672136; the inspector job, DICOT 559.687-074, 1991 WL 683797; and the

---

[7] Defendant excludes the occupation of information clerk because it requires a reasoning level of 4 which potentially conflicts with Plaintiff's residual functional capacity, which limits her to performing "simple repetitive tasks." (Def.'s Opp'n 10 n.2, ECF No. 25; <u>see also</u> Admin. R. 20, ECF No. 16.) Reasoning level 4 requires the ability to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." DOT, App. C, 1991 WL 688702. The Commissioner also excludes the hand packager (also referred to as bag loader) job because it "frequently" requires exposure to atmospheric conditions. <u>See</u> DICOT 737.687-104, 1991 WL 680044.

subassembler job, DICOT 729.684-054, 1991 WL 679729.  Thus, Plaintiff's argument fails because the DOT's description of the four jobs identified above are not inconsistent with Dr. Masters's opinion that Plaintiff should avoid even moderate exposure to pulmonary irritants.

  Notwithstanding the lack of atmospheric conditions in four of the jobs identified by the ALJ, Plaintiff contends that the DOT is not reliable because it "does not provide a comprehensive classification of all work categories." (Pl.'s Reply 4, ECF No. 28.)  She refers to an excerpt from The Revised Handbook for Analyzing Jobs, originally published by the U.S. Department of Labor in 1991, to support her argument that the DOT has a "gap" in its atmospheric conditions classifications because The Revised Handbook classifies degrees of exposure to pulmonary irritants in a manner that the DOT does not. (Id. at 5-6.)  Plaintiff refers to two occupations, air analyst and dust mixer, to persuade the Court that the DOT's "atmospheric conditions" classifications are unreliable.  (Id.)  Specifically, she contends that air analysts and dust mixers are exposed to pulmonary irritants even though the atmospheric conditions classification in the DOT for each of these occupations is "not present."  (Id.)  While this is an interesting argument, it is irrelevant to the case at hand because the ALJ did not identify these occupations as jobs that Plaintiff can perform.  Moreover, the Court notes that at least one district court has previously rejected this same argument.  See Williams v. Colvin, Case No. CV 15-01743-RAO, 2015 WL 7740412, at *6 (C.D. Cal. Nov. 30, 2015) (declining to find, contrary to the DOT, that air analysts and dust mixers are necessarily exposed to pulmonary irritants).

  The ALJ's error in reading Dr. Masters's opinion and failure to address or incorporate the doctor's finding that Plaintiff should avoid even moderate exposure to pulmonary irritants was harmless because the ALJ sufficiently identified other work in the national economy that Plaintiff could perform that did not require exposure to any

atmospheric conditions.  See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination").  Accordingly, the ALJ's evaluation of the state agency physicians' opinions does not constitute a basis for remand.

### C. Unconstitutional Delegation of Authority Argument

Although the Court finds that remand is appropriate, the Court will briefly address Plaintiff's constitutionality argument.

Plaintiff contends that the appointment of Commissioner of Social Security Andrew Saul was unconstitutional because he could not be removed by the President without cause, therefore rendering the ALJ's decision, which was issued during Commissioner Saul's tenure, defective. (Pl.'s Mot. Attach. #1 Mem. P. & A. 12-14, ECF No. 21.)  The Ninth Circuit's recent opinion in Kaufmann v. Kijakazi, 32 F.4th 843 (9th Cir. 2022), decided after the briefs in this case were filed, is dispositive of this issue.  In Kaufmann, the Ninth Circuit held that the removal provision in the statute governing the President's removal authority over the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), was unconstitutional and severable. Id. at 848.  In deciding the appropriate remedy for the plaintiff, whose appeal to the Appeals Council was denied while former Commissioner Saul was serving under the unconstitutional removal statute, the court stated that "[a] party challenging an agency's past actions must [] show how the unconstitutional removal provision actually harmed the party[.]" Id. at 849.  Here, as in Kaufmann, Plaintiff has not presented any evidence or articulated a plausible theory to show that the removal provision caused her any harm.  See id. at 849-50.  Therefore, "the unconstitutional provision has no effect on [her] case." See id. at 850.

### D. Remedy

Plaintiff argues that the proper remedy in this case is remand for the payment of benefits or, in the alternative, remand for further proceedings.  (Pl.'s Mot. Attach. #1

Mem. P. & A. 15-16, ECF No. 21.) The Commissioner contends that the case should be remanded for further administrative proceedings if the Court finds any grounds for overturning the agency's decision. (Def.'s Opp'n 29-30, ECF No. 25.) The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); Treichler, 775 F.3d at 1099. A remand for an immediate award of benefits is appropriate only in rare circumstances. See Brown-Hunter, 806 F.3d at 495. "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Here, although the Court finds that the ALJ committed legal error in his evaluation of Plaintiff's subjective symptom testimony, the Court is not satisfied that further administrative proceedings would serve no useful purpose. Accordingly, remand is appropriate for further consideration of this issue.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**; Defendant's Cross-Motion for Summary Judgment is **DENIED**; and the case is **REMANDED** for further proceedings.

This Order concludes the litigation in this matter. The Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: July 12, 2022

Hon. Ruben B. Brooks
United States Magistrate Judge